Good morning, Your Honors. May it please the Court, Warren Winston on behalf of the petitioner, Mr. Farahmandfar. This is a case that came to my attention after the review by the Board of Immigration Appeals. When I first read the certified administrative record of this case, as a lawyer practicing immigration law for well over 30 years, I was horrified at the way this group of attorneys deceived their client, deceived the immigration judge, proposed to show evidence of a filing that they knew they had never done, and eventually when they admitted that they had committed these acts to the judge, the judge had no choice but to ask, I think, the sixth attorney who appeared in court if the attorney wished to put on any additional evidence. That attorney waived that without respect to Mr. Farahmandfar's wishes, and the case proceeded to the Board of Immigration Appeals. Rarely do I ever come before this court and say that I believe the immigration judge did the right thing. In this case, the immigration judge did the right thing. She continually requested that the evidence that this gentleman was eligible to adjust his status be provided. Each lawyer either lied or intentionally misled the court or out of sheer negligence provided no evidence. We are faced with a case that looks to me very much like what happened in the Evagian case. And this court in 2011 issued a decision in the Evagian case where they said that many, many immigrants fall victim to incompetent and fraudulent counsel who extract large sums of money but prefer inadequately or not at all. And because of that, the court recognized that equitable tolling may be a remedy. We have not reached in this circuit equitable tolling to this degree of attorney malfeasance. The attorney was disbarred for visa fraud that he originally hired. And I feel that as a practitioner in the field, this gentleman should be given an opportunity to go back to the immigration judge and present his case for consideration of equitable tolling in that he can now demonstrate what none of his lawyers were willing to put on the record. They never even called him to the stand. There is not one shred of evidence in this that was presented other than statements which were misleading or bold-faced lies by the lawyers that were representing him. With that in mind, I look at the equitable tolling cases that have come before the court in the past. Most of them involve either simple negligence or to some degree an attorney simply ignoring the statutory requirements. In this case, he lied to the petitioner when the petitioner returned to his office seven months after supposedly filing an application on his behalf. He gave him a date, specific date, said that I filed this application on April 19th, 2001.  Kennedy, Jr. How does that really matter with regard to the – I mean, how does the level of egregiousness matter? The fact that he didn't file by the given date, if it's a statute of repose, ends the question. And the fact that the petitioner may have been lied to thereafter doesn't change the fundamental fact that the paper wasn't filed by the required date. Yes, I agree in one respect. As to that matter, the court is correct. But then he hired the same lawyer to file an application to keep him in status, which was an application called a change of status to student visa. When the lawyer, the same lawyer, received a letter stating that the amount of funds necessary to become a student were inadequate, he had in his possession, the lawyer had in his possession, evidence of substantial funds in American bank accounts. How do we know that? Well, I know that. That's the problem. But part of the problem is that the record is devoid of – Correct. The government raises a question in its brief as to whether that could actually be proven, and the record doesn't tell us. Yes, and I agree that the record doesn't tell you, and I agree that the record is a horrible example of lawyering. I have asked for remand only so that we have the opportunity to present the evidence of malfeasance or possibly intentional disregard of his obligations as an attorney. Every time that lawyer, Eli Rich, the one who was convicted of visa fraud and is now disbarred, sent a representative of his office to the court, he failed to disclose – that lawyer in court failed to disclose – what Eli Rich knew. Now, was Eli Rich lying to the lawyer in his own firm, or – we don't know. We just don't know. But we do know one thing, and that is that this gentleman was the victim of a horrific lawyering experience. And to this date, he has had no remedy. He has never taken testimony. His testimony was never taken in court. None of his lawyers would put him on the stand. At no time whatsoever was he asked to provide that evidence that he had complied with what Mr. Rich was asked for by the legacy INS on the application for the student visa. You know, it's a terrible story as you portray it, and I assume it is true. But where does it get you under the law? I will tell you. If we can show that the application for student visa would have been approved but for the lawyer's malfeasance, Mr. Farmanfar would have been in legal status. He would not have – an NTA never would have been issued. He would have had a student visa. We know that the labor certification, even though it was filed 15 months late, was ultimately approved. The petition was ultimately approved. He has worked continuously in this field. He has raised his children in the United States, one of whom is about to become an American citizen. And he has complied in all aspects with what his lawyers divulged him. Unfortunately, they did not divulge the truth. If they would have provided him with a copy of the request for evidence that he provide more information regarding his available funds, he would have said, Mr. Rich, I provided that. It's in your file. But here's another copy. Send this in. He was never told. He wasn't even told that the case was denied until he received an NTA. I would like to reserve two minutes unless the Court has questions. Thank you. Thank you. You certainly drew the sympathetic cases. It's just my luck, Your Honor. Colin Tucker again for the Attorney General. In this case, the agency correctly held that the petitioner is ineligible to adjust his status pursuant to Section 1255I. In relevant part, that statute requires that an applicant be the beneficiary of an approved petition for labor certification that was filed prior to April 30, 2001. The Court has held in binding precedent that that date represents a statute of repose that cannot be equitably told. There's no dispute here that the application the petitioner based his – excuse me, that the petitioner based his application for adjustment of status on was not filed prior to that date. The Court does not need to know. Is there any kind of exception to that? I'm unaware of any exception, Your Honor. Can you conceive – you're a good lawyer. Can you conceive of any exception or do you think that's an absolute bar, no matter what? I hesitate to speak in complete unqualified, Your Honor, always. But, no, I honestly cannot conceive. I mean, we've seen in Malamchuk, the case that binds this Court, we see an example where an attorney was instructed to file a petition prior to the deadline. He failed to do so. And that rendered the alien in that case ineligible for adjustment of status. In every material aspect, that case is indistinguishable from this one. As far as the level of egregiousness concerns – is concerned, again, the rule is not that the April 30, 2001 deadline cannot be equitably told unless we have a specially egregious attorney misconduct. The rule is that the deadline cannot be equitably told, period. And I think that's all the Court needs to know to deny this petition for review. Have you discussed with your client the possibility of mediation? I have not, Your Honor. There's never been a request for mediation either – well, obviously, the Court has never ordered mediation. And the – I've never spoken to opposing counsel with regard to mediation either. I also – I don't want to, again, write off anything, but I can say that the facts of this case, I don't know how mediation could have a positive outcome for the Petitioner here. You don't know how it would work? How mediation could have a positive outcome for the Petitioner here. Well, everything – first place, as you know, that the government gets lots of denials of petitions so that it's free to deport people. And then whatever happens, it doesn't actually deport them, even though we spend a lot of time giving them the authority to do so. So there's a lot of discretion in the government at all stages of this process. And do you know of anything that bars you from going to mediation and arriving at some kind of relief? Anything that – in this case, it would depend on the form of relief that's requested, I suppose, Your Honor. I know of no other potential eligibility for relief beyond adjustment of status under 1255I, because that's all the Petitioner has ever requested here. If he feels he is eligible for any other form of relief, he's free to file a motion to reopen, which lays that out before the board. The board can issue a decision on that. And if he disagrees, he can file another petition for review. Well, we do have a very good mediation service, and we've had some luck with ICE or the department or whoever. So often we can't decide who's really got the responsibility for the final decision. But they have gotten together frequently, and we've had some luck in that process. And we can consider whether that would be a good solution for you, given that we haven't heard of any raving absolute objection to going through the process. I don't want to – again, I don't want to make an unqualified statement that I would not answer the phone on the day of the mediation call, Your Honor. I am – shall we say I have my doubts as to what the – whether there would be a positive final outcome. But I'm – we're always willing to listen, I suppose. That being the case, I would maintain that this petition for review, absent the mediation that you're discussing now, should be denied. The binding precedent and balance sheet would be straightforward. In your brief, you expressed or the government expressed some skepticism about underlying facts. And I suspect the client with whom you communicate may have that skepticism. Specifically with regard to the financial – the ability to demonstrate financial – the $10,000 wherewithal and the question of when he first entered the country. Would the possibility of mediation be approved if there were communication amongst counsel such that you might be satisfied that, in fact, petitioner could prove that he entered the country when he alleges that he did, and could prove and would have evidence that might subsequently satisfy the BIA or an IJ, that, in fact, the facts that are alleged but not demonstrated in the record were, in fact, truthful? I don't – I don't think it would, Your Honor. Even if – I can stand here and I can, for the sake of argument, accept that he was in the country prior to the April 30, 2001 deadline, that he did go to that attorney and ask him to file a petition for labor certification prior to the deadline, and that the attorney did, in fact, fail to do so. But even if we accept all those facts, it doesn't change we can't equitably toll the April 30, 2001 deadline. Well, I'm not trying to ask for equitable tolling in the sense that, at this point, it becomes a judgment on the part of the government, DHS, as to whether it wants to pursue or prioritize a matter where, in fact, it appears the petitioner was wrong by as an attorney. I can understand completely the government doesn't want to move away from the clear legal proposition this is a statute of repose not subject to being equitably tolled. On the other hand, the petitioner's case is a whole lot more sympathetic if, in fact, what he alleges can be proven. Given that the government has expressed skepticism about the factual allegations, that's why I ask the question. If, in fact, DHS could be satisfied that he did come into the country when he first says he did and did have the financial wherewithal and could have proved it at the time, so this purely is a lawyer's screw-up, not something murky that you can't be sure what happened, whether that might change DHS's position. And I don't know that you're in a position to ask that. But it seemed to me if anything does happen in the future, it's not going to happen so much from us. It's going to happen from judgments made by DHS with your counsel and possibly facilitated by communications amongst counsel. Because, frankly, if the government's skepticism about the underlying facts remains, I think there's zero chance that mediation or any other discussions will lead to something. If the government doesn't believe he came in when he says he came in, government doesn't believe he could have proven financial wherewithal, they're not going to budge. I accept that. So that's why this isn't a question so much as a suggestion. If anything's going to happen after today, I think it's going to happen not on this stage, but what happens amongst the parties and with DHS. Not a question, so not anything you can answer. Thank goodness, no. You know, it is sometimes difficult to know what the government may be willing to do or what type of relief they might be willing to negotiate until you go up the ladder sometimes. I mean, the ICE attorneys often say, well, we can't do that. You know, it's the Department of whatever. I never can remember these departments still from all the ages. Homeland Security, I guess it is. And the more we have discussions as a court with the agencies from time to time, and they always are very encouraging. And then they say, well, it's the other one that wouldn't do it. But the higher up you get, I know you're bound by the policies, but the higher up you get, the more they indicate a willingness to adjust some of these really difficult cases until they get to the point where they say, well, the other one won't do it. ICE won't or ICE's. Homeland Security won't. But some of them can really be when they're really good cases on the equities. Sometimes they can be worked out because our mediators know these people, and sometimes they come back and say, no, no chance. And other times they say, well, if we pursue it up the line far enough, they will agree to be more flexible. So I think Judge Clifton's suggestions may give you more fodder to go to those people, whoever they are, who can exercise this discretion in the Morton Memo, and in general the discretion the department really has. So maybe with luck you'll hear from your opposing counsel. And if you would advise us after a month whether there's any willingness in the part of your clients to consider possible mediation discussions, we'll defer it for a month until we hear from you. I can do that, Your Honor. Thank you. Thank you very much. I hope you had a good trip. Getting better, Your Honor. May it please the Court, I want to inform you that the passport which contains the proof of the entry prior to the April 2001 deadline is in the possession of the Department of Homeland Security. The records of entry, he made a legal entry with a visa that was issued in Tel Aviv. Every one of those records are available. The Department of Homeland Security has those records, and they can satisfy themselves that he was in fact in the United States. He can satisfy, if given the opportunity, the court's question as to whether or not he retained the attorney. But there is one further point that I want to make, and that is that mediation, wonderful. I'm happy to sit down. I'm happy to provide all the evidence. There is relief on the horizon. His daughter has applied for U.S. citizenship. She will probably be a citizen before this court could make a decision in this case, probably within 90 days. She will file a petition. I would ask the government to reopen the proceedings below and file a petition. You can do that all informally. You've got your opposing counsel here. You can have a discussion with him about that. Explain why there would be relief available in mediation. Give him all that information, and I would suspect that if they look into it again at this point and see that there is potential relief, there is a fair chance they will come back and tell us they don't really object to mediation, when you can point out to them there is a practical purpose that could be done if they are only willing to do it. No point sending it to mediation if they take a position now that no matter what, when they get a call, they are going to say no, no matter what. So if you have a discussion now with your opposing counsel, it can only help to inform whoever above him may have to make the decision when he presents your case to them. So we'll wait a month to hear from both of you. I appreciate the court's concerns, and I will follow the court's guidance. I don't really believe they want to deport this Libyan gentleman who has been such a fine person ever since he got here. I don't really think they want to send him back to Libya. But unless they really have to, there must be better things for them to do. This one isn't the Libya one. This is Iran and Israel. Is he going back to Israel or Iran? He's an Israeli citizen. He's an Israeli? Israeli citizen, yes. Where would he be sent to? Israel. That's the country of his citizenship. Well, that sounds so bad. That's probably true. However, having a daughter here who is my client and is about to become an American citizen who wants to raise a family, I think she would prefer to have the grandfather of her child in the United States rather than in Israel. And she will file a petition for him as soon as she becomes a citizen. I will present all of that information to opposing counsel. Thank you very much.
judges: Rakoff, Reinhardt, Clifton